IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TRACEY A. GOULD JR.,

    Plaintiff,

vs.                                                    CASE NO. 1:13-cv-80-MP-GRJ

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits and supplemental security income ("SSI"). (Doc. 1). The Commissioner has answered (Doc. 9), and both parties have filed briefs outlining their respective positions. (Docs. 16, 17.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff applied for disability insurance benefits and SSI on August 13, 2010, alleging disability beginning February 23, 2009 due to schizophrenia, bipolar disorder, and depression. (R. 178-83, 206.) His application was denied initially and upon reconsideration. (R. 81-86, 92-95.) A hearing was held before an Administrative Law Judge (ALJ) on December 8, 2011, and the ALJ denied Plaintiff's claims in a decision dated February 14, 2012. (R. 14-79.) The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision. (R. 1-4.)

On April 23, 2013, Plaintiff filed the instant appeal to this Court. (Doc. 1.) On appeal, Plaintiff raises one issue: whether the ALJ erred by failing to fully and fairly develop the record regarding Plaintiff's mental impairments. (Doc. 16.)

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[8] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[9] The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[9] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

*Case No. 1:13-cv-80-MP-GRJ*

determination that a claimant is disabled or not disabled.[10]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[11] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[12]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[13] Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[14] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

---

[10] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[11] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[12] Walker, 826 F.2d at 1003.

[13] Wolfe, 86 F.3d at 1077-78.

[14] See id.

### III.  SUMMARY OF THE RECORD

**A.  Medical Records**

Plaintiff received most of his treatment for his mental health impairments at Meridian Behavioral Healthcare.  He was referred to Meridian's forensic program in February 2007 by the staff at the Alachua County Jail.  In January 2008, he was treated for alcohol dependence and Oxycontin and Ecstasy abuse.  He was diagnosed with a psychotic disorder NOS and substance induced mood disorder.  (R. 289-90.)  A low dose of Risperdal was recommended for psychosis.  (R. 290.)  In November 2008, Plaintiff was evaluated at Meridian and reported his diagnoses as chronic alcohol abuse and impulse control disorder.  He reported taking prescribed psychotropic medications.  (R. 285.)  In June 2009, Plaintiff was discharged from the forensics program because he would be serving a 6-month jail sentence in lieu of further probation.  (R. 281.)  Upon discharge, Plaintiff's diagnoses were mood disorder, NOS; alcohol dependence; depression; and unspecified affective psychosis. His Global Assessment of Functioning (GAF) was 55, and his prognosis was guarded.  (R. 282.)

In August 2010, Plaintiff was seen at the emergency room after he was found unresponsive with a needle in his arm.  He was given Narcan and discharged the same day with instructions to follow up with a primary care provider regarding his drug overdose and alcohol intoxication.  (R. 378.)

Plaintiff returned to Meridian in 2010, after his overdose.  A September 22, 2010 psychiatric evaluation reflects that Plaintiff's mental status was fair, and he was assigned a GAF of 50 with a guarded prognosis.  (R. 399.)  On October 27, 2010,

Plaintiff reported that he had been clean and sober for one month. He reported feeling well and denied anxiety or depression, but had some trouble sleeping and problems with anger. On exam, Plaintiff's appearance was fair; manner appropriate; and motor behavior was normal. Plaintiff's speech was normal and his cognition was grossly intact. His mood was "ok" and his affect was flat, with an organized thought process. Plaintiff's insight and judgment were fair. Plaintiff was diagnosed with a mood disorder NOS and prescribed Seroquel XR. (R. 392-393; 401-03.) In December 2010, Plaintiff told providers at Meridian that he was looking for a job. His prognosis was an 8/10 and his mental status exam was normal, with calm affect and organized thought process. It was recommended that he start Depakote for anger control, continue Seroquel, and follow up in two months. (R. 438.)

Plaintiff also received mental health treatment during the various times he was incarcerated at the Alachua County Jail. A June 30, 2011 entry reflects that Plaintiff's diagnoses were alcohol dependence, bipolar disorder, schizophrenia, and depression. (R. 446.) On July 11, 2011, it was noted that Plaintiff had previously been taking Seroquel and Prozac for depression. (R. 450.)

On October 29, 2010, state agency psychologist Alan Harris, Ph.D., found insufficient evidence to assess the claim because the most recent medical evidence was from 2009 and Plaintiff failed to attend his scheduled consultative examination. (R. 420.)

However, on December 21, 2010, state agency psychiatrist Dr. Richard Gann reviewed Plaintiff's updated medical records and completed a psychiatric review

technique and mental residual functional capacity assessment.  (R. 422-35, 493-96.)  In his notes, Dr. Gann concluded that Plaintiff's primary impairment was drug and alcohol addiction.  He pointed out that after a month of abstinence, Plaintiff reported to Meridian in October 2010 with stable mood, flat affect, grossly normal cognition, and fair judgment and insight.  Dr. Gann opined that Plaintiff's problems with memory and understanding were probably due to drug and alcohol addiction.  (R. 434.)  Dr. Gann opined that Plaintiff had mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace; and no episodes of decompensation.  (R. 432.)

In his functional capacity assessment of Plaintiff, Dr. Gann opined:

The claimant is able to understand, remember and carry out simple one and two step instructions and procedures.

The claimant is able to maintain concentration, persistence, and pace for periods of two hours.  The claimant is able to perform activities within a schedule.  The claimant is able to maintain regular attendance, be punctual and complete a normal workday and workweek.  The claimant does not require special supervision.  The claimant can work in coordination with or proximity to others without being distracted by them.  The claimant is able to make simple work-related decisions.

The claimant is able to relate adequately to coworkers and to supervisors, ask simple questions and request assistance, accept instructions, and respond appropriately to criticism from supervisors.

The claimant is able to respond appropriately to changes in the work setting, be aware of normal hazards, and take appropriate precautions.

(R. 495.)

### B. Hearing Testimony

At his December 8, 2011 administrative hearing, Plaintiff testified that he

completed the 10th grade. (R. 37.) His most recent employment was in the warehouse of Interstate Batteries System of North Florida, but that job ended because Plaintiff violated his probation. (R. 42.) Plaintiff testified that he cannot work because he has panic attacks, because of his personality, and his high blood pressure. (R. 44-45.)

Plaintiff testified that he was not currently taking any medication and had not seen a doctor for several months. (R. 47.) He smokes approximately a half pack of cigarettes per day and does not drink or do drugs. (R. 49.) Plaintiff testified that he does not like to be around crowds. (R. 50.) He lives with various friends "from place to place." (R. 52.) Plaintiff testified that on a typical day, he might visit his grandmother and help her with household chores. (R. 53.) He visits his grandmother every day, and sometimes walks to his mother's house, who lives two blocks from his grandmother. He does not drive because his license is suspended. (R. 56.) He enjoys playing cards and talking with family and friends. (R. 57-58.) Plaintiff testified that his hobbies are singing, rapping, drawing, and "clowning" around with his friends. (R. 58-59.)

Plaintiff's father also testified at the administrative hearing. He testified that Plaintiff had not taken his medication in four months because he was ineligible for Medicaid. (R. 68.) He stated that during the three years Plaintiff was employed, he was taking his medication. (R. 69-70.) However, he did not think Plaintiff would be able to work even if he resumed taking psychotropic medication, due to his high blood pressure and dizziness. (R. 71.)

### C. ALJ's Decision

The ALJ determined that Plaintiff suffered from the severe impairments of mood

disorder (not otherwise specified); polysubstance dependence; schizophrenia; bipolar disorder; and depression.  (R. 19.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing.  (R. 20.)  Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels with several non-exertional limitations:

> Specifically, the claimant can maintain his concentration, persistence, and pace for two-hour periods, and is able to carry out one to two step instructions, with the provision of normal breaks not exceeding employer tolerances.  The claimant is limited to work that does not require complex written or verbal communication, or frequent verbal communication.  The claimant is also limited to a work environment free of fast-paced production requirements involving only simple work related decisions and routine work place changes.  Lastly, the claimant's [sic] must be isolated from the public with only occasional supervision and only occasional interaction with co-workers.

(R. 22.)  The ALJ determined that although Plaintiff could not perform his past relevant work as a battery loader, jobs did exist in significant numbers in the national economy that Plaintiff could perform (i.e., laundry laborer, garment sorter, coin machine collector).  (R. 26-28.)  Accordingly, the ALJ found that Plaintiff was not disabled.  (R. 28.)

## IV.  <u>DISCUSSION</u>

Plaintiff raises one issue on appeal: whether the ALJ failed to fully develop the record as to Plaintiff's mental impairments.  Plaintiff asks the court to remand this matter with directions to "afford Plaintiff Gould a consultative psychological exam with a mental residual functional capacity assessment and take such other steps that are needed to fully and fairly develop this record." (Doc. 16, pp. 9-9.)  For the following

reasons, this argument is without merit, and the ALJ's decision is due to be affirmed.

It is well-settled that an ALJ has a basic obligation to fully and fairly develop the record.[15] This obligation exists whether or not a claimant is represented by counsel.[16] As a hearing is non-adversarial in nature,[17] the duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.[18] In all such cases, there must be a showing of prejudice before remand is warranted for further development.[19] Prejudice has been found when the record "has evidentiary gaps which result in unfairness or 'clear prejudice.'"[20] An ALJ, however, is not required to order medical evidence to have a complete record unless the record establishes that it is necessary to enable the ALJ to render his decision.[21]

Here, Plaintiff argues that the record was not fully developed as to Plaintiff's mental impairments and that the remedy is to remand for a consultative examination. What Plaintiff fails to mention in his brief is that a consultative examination was

---

[15] Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981); see also Zaldivar v. Apfel, 81 F. Supp. 2d 1353, 1359 (N.D. Ga. 2000).

[16] Zaldivar, 81 F. Supp 2d at 1359.

[17] Id.

[18] Mason v. Barnhart, 63 Fed. Appx. 284, 2003 WL 1793283, *2 (9th Cir. 2003).

[19] Brown v. Shalala, 44 F. 3d 931, 935 (11th Cir. 1995); Kelley v. Heckler, 761 F. 2d 1538, 1540 (11th Cir. 1985).

[20] Brown, 44 F. 3d at 935 (quoting Ware v. Schweiker, 651 F. 2d 408 (5th Cir. Unit A July 1981)).

[21] Holladay v. Bowen, 848 F. 2d 1206 (11th Cir. 1988) (concerning the ordering of a consultative examination); Kelly, 761 F. 2d at 1540 (concerning additional medical information submitted by claimant).

*Case No. 1:13-cv-80-MP-GRJ*

scheduled for Plaintiff, but he refused to attend. The evidence related to Plaintiff's failure to attend the consultative exam is summarized as follows:

In his August 2010 application for benefits, Plaintiff acknowledged, among other things, that "I understand that I may be requested by the state disability determination services to have a consultative examination at the expense of the Social Security Administration and that if I do not go, my claim may be denied." (R. 179.) Case notes in Plaintiff's claim reflect that on September 21, 2010, a representative from the Social Security Administration called and left two messages, one with Plaintiff and one with his aunt, requesting a return call. (R. 222.) Plaintiff's father called back that same day, and on October 5, 2010, Plaintiff's father was advised via telephone that Plaintiff needed to schedule a consultative exam. Plaintiff's father stated that he would try to get Plaintiff to go to the exam. Plaintiff's father confirmed Plaintiff's address, telephone number, treating sources, allegations, and medications. Plaintiff's father was advised that if Plaintiff failed to attend the examination, a decision could be made based upon the evidence in the file. The consultative exam was scheduled for October 20, 2010, and the record reflects that Plaintiff was sent an appointment reminder on October 5, 2010. (R. 223.)

On October 8, 2010, Plaintiff's father called and was given the consultative exam date, time, and location. Plaintiff's father assured that Plaintiff would attend. On October 16, 2010, Plaintiff was reminded by telephone message of his appointment. On October 18, 2010, a phone message was also left with Plaintiff's father regarding the consultative exam. (R. 223.) On October 19, 2010, Plaintiff's father called and

confirmed that Plaintiff would keep his consultative examination appointment. (R. 224.) On the day of the consultative exam, October 20, 2010, Plaintiff's father called and reported that he was unable to get Plaintiff to attend the exam–Plaintiff became angry with his stepfather and left his mother's house. The consultative exam vendor confirmed that Plaintiff was a no-show to his consultative exam. An October 29, 2010 follow up note in Plaintiff's file clarified the actions taken related to the consultative exam:

> Additional information was needed from the claimant to continue processing this claim. A request was made as noted above. For any scheduled CE, this included a notification, and a follow-up reminder letter sent ten days prior to the date of the appointment. The reminder letter asked claimant to call within ten days, noting that failure to respond could result in a finding that the claimant was not eligible for disability benefits. After ten or more days had passed and the claimant had failed to respond to the request; a follow-up request was made as indicated above, requesting that the claimant respond within ten days and noting that failure to respond could result in a decision being made on the evidence in the file and that this could result in a finding that the claimant was not eligible for disability benefits. The claimant failed to respond to the follow-up request.

(R. 224.)

Plaintiff had a duty to attend his consultative examination. Refusal to attend a consultative examination without good reason can result in the denial of disability benefits. 20 C.F.R. § 416.918; *Gaulding v. Astrue*, 2010 WL 3291757, at *4-5 (S.D. Ga. 2010) (rejecting claimant's attack on ALJ's assessment of back complaints where claimant "did not provide any reason, let alone, good cause, for her failure to appear for her scheduled and re-scheduled consultative examinations") (adopted at 2010 WL 3291831); *Levy v. Astrue*, 2008 WL 4753518, at *14 (S.D. Fla. 2008) (concluding that

lack of existence of a consultative psychological examination was the fault of the claimant where claimant "did not bother to attend her consultative examination" until after the ALJ had issued his decision).

Regulation 20 C.F.R. § 416.918 ("If you do not appear at a consultative examination") states: "If you are applying for benefits and do not have good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability . . . we may find that you are not disabled . . ." The regulation provides examples of "good reasons for failure to appear," such as illness, not receiving notice of the scheduled examination, being furnished incorrect or incomplete information, having had death or serious illness occur in one's immediate family, or the claimant's treating physician objects to the examination. *Id.*

Here, the record demonstrates that despite being given repeated notice of the exam, warnings of the consequences of not attending, and despite Plaintiff's father's efforts to ensure his attendance, Plaintiff refused to attend his scheduled consultative examination. Refusal to attend a consultative examination because one is "angry" (R. 224) is not good cause within the requirements of the regulation. Plaintiff has failed to show good cause for refusing to attend the consultative examination, and therefore the ALJ was entitled to making a finding that Plaintiff was not disabled based on the information available to him. Nor does the record reflect that Plaintiff's representative requested that the ALJ order an additional consultative examination. Any scarcity of evidence is the fault of Plaintiff, not the ALJ.

However, while the evidence may be limited due to Plaintiff's refusal to attend his consultative examination, the ALJ's decision is still supported by substantial evidence. The record contains more than 200 pages of treatment records, including those from Meridian, Shands, and the Alachua County Jail . The ALJ relied upon Dr. Gann's expert opinion that Plaintiff could, among other things: understand, remember and carry out simple one and two step instructions and procedures; maintain concentration, persistence, and pace for periods of two hours.; and make simple work-related decisions. (R. 495.) Dr. Gann opined that Plaintiff had mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace; and no episodes of decompensation. (R. 432.) Dr. Gann based his opinions on a review of the medical records, noting Plaintiff's allegations of schizophrenia, bipolar disorder, and depression, while opining that Plaintiff's primary impairment was drug and alcohol addiction. (R. 434.) Plaintiff's treatment records–which reflect that his symptoms can be controlled when he abstains from drug and alcohol abuse and complies with his psychotropic medication regiment–are consistent with both Dr. Gann's opinion and the ALJ's mental RFC for Plaintiff.

In fact, the ALJ's mental RFC is even more restrictive than Dr. Gann's, restricting Plaintiff to work that does not require complex written or verbal communication, or frequent verbal communication; a work environment free of fast-paced production requirements involving only simple work related decisions and routine work place changes; and work that is isolated from the public with only occasional supervision and

only occasional interaction with co-workers.  (R. 22.)   The ALJ's hypothetical to the vocational expert reflected these limitations, and the VE testified that while such a hypothetical individual could not perform Plaintiff's past work, such an individual could work as a laundry laborer, garment sorter, or coin machine collector.  (R. 76-77.)  All of these jobs have a specific vocational preparation (SVP) of 2, making them unskilled work.

Here, the ALJ fully and fairly developed the record where Plaintiff refused to attend his scheduled psychological consultative examination without good cause.  The ALJ therefore was entitled to make a finding based on the record before him, and the Court finds that the ALJ's decision was supported by substantial evidence.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida this 16th day of April 2014.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

*Case No. 1:13-cv-80-MP-GRJ*